**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

GILBERTO GUZMAN,         )     3:13-cv-00069-MMD-WGC
                          )
      Plaintiff,         )
                          )    **REPORT AND RECOMMENDATION**
     vs.                   )    **OF U.S. MAGISTRATE JUDGE**
                          )
CAROLYN W. COLVIN,       )
Commissioner of Social Security,  )
                          )
      Defendant.       )
_____)

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff Gilberto Guzman's Motion for Reversal and/or Remand. (Doc. # 18.)[1] Defendant Commissioner filed an Opposition to Plaintiff's motion (Doc. # 19) and a Cross-Motion for Summary Judgment (Doc. # 20).[2] After a thorough review, the court recommends that Plaintiff's motion be denied and the Commissioner's cross-motion be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of the Commissioner's final decision, Plaintiff was a forty-three year old man who attended school through the eleventh grade and previously worked as a warehouse laborer and forklift operator. (Administrative Record (AR) 24, 35.)

---

[1]    Refers to court's docket number.

[2]    These documents are identical but were separately docketed by the Clerk. For simplicity, all references to arguments raised in both the opposition and motion will be to Doc. # 19, as it is first in order.

1    On April 26, 2010, Plaintiff filed an application for Disability Insurance Benefits (DIB),

2    alleging that he became disabled on November 6, 2009. (AR 137-38.) Plaintiff alleged

3    disability due to degenerative disc disease and status post lumbar decompression and fusion.

4    (AR 21.) The Commissioner denied Plaintiff's application initially and on reconsideration.

5    (AR 73-76, 85-87.) Plaintiff made a timely request for a hearing before an Administrative Law

6    Judge (ALJ) to challenge the Commissioner's determination. (AR 88-89.)

7    On November 14, 2011, Plaintiff, represented by counsel, appeared and testified at the

8    hearing before the ALJ. (AR 31-69.) The ALJ followed the five-step sequential process for

9    evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision

10   on December 8, 2011, finding Plaintiff was not disabled pursuant to the Social Security Act

11   at any time from the alleged onset date through the date of the ALJ's decision. (AR 16-30.)

12   Plaintiff appealed the decision, and the Appeals Council denied review. (AR 1-5.) Thus, the

13   ALJ's decision became the final decision of the Commissioner.

14   Plaintiff now appeals the ALJ's decision to the district court. (Doc. # 18.) Plaintiff

15   argues that the ALJ improperly discredited his testimony. (*Id.*) The Commissioner disagrees,

16   and argues that the ALJ properly evaluated Plaintiff's testimony and the medical evidence in

17   the record. (Doc. # 19.)

18                              **II.  STANDARD OF REVIEW**

19   The court must affirm the ALJ's determination if it is based on proper legal standards

20   and the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r*

21   *Soc. Sec. Admin.*, --- F.3d ---, 2014 WL 241873, at *3 (9th Cir. Jan. 23, 2014); *Stout v.*

22   *Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g)

23   ("findings of the Commissioner of Social Security as to any fact, if supported by substantial

24   evidence, shall be conclusive"). "Substantial evidence is 'more than a mere scintilla but less

25   than a preponderance; it is such relevant evidence as a reasonable mind might accept as

26   adequate to support a conclusion.'" *Gutierrez*, 2014 WL 241873 at *3 (quoting *Hill v. Astrue*,

27   698 F.3d 1153, 1159 (9th Cir. 2012)).

28
                                        2

1   To determine whether substantial evidence exists, the court must look at the record

2   as a whole, considering both evidence that supports and undermines the ALJ's decision.

3   *Gutierrez*, 2014 WL 241873, at *3 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir.

4   2001)). "If the evidence can reasonably support either affirming or reversing, the reviewing

5   court may not substitute its judgment for that of the Commissioner." *Id.* (citation and

6   internal quotation marks omitted). That being said, "a decision supported by substantial

7   evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citations

8   omitted). The ALJ alone is responsible for determining credibility and for resolving

9   ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

10   The initial burden of proof rests upon the claimant to establish disability. *See* 20 C.F.R.

11   § 404.1512(a)*; Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted).

12   To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial

13   gainful activity by reason of any medically determinable physical or mental impairment which

14   can be expected to result in death or which has lasted or can be expected to last for a

15   continuous period of not less than 12 months" 42 U.S.C. § 423 (d)(1)(A).

16   ### III.  DISCUSSION

17   **A. Five-Step Sequential Process**

18   The Commissioner has established a five-step sequential process for determining

19   whether a person is disabled. 20 C.F.R. § 404.1520*; see also Bowen v. Yuckert*, 482 U.S. 137,

20   140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of

21   disability or nondisability, a determination will be made and the SSA will not further review

22   the claim. 20 C.F.R. § 404.1520(a)(4)*; see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

23   In the first step, the Commissioner determines whether the claimant is engaged in

24   "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied.

25   20 C.F.R. § 404.1520(a)(4)(i), (b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged

26   in substantial gainful activity, the Commissioner proceeds to step two.

27

28                                                    3

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.* Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id.*

In the third step, the Commissioner determines whether the impairment is listed or is the equivalent of one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 (Listed Impairments). 20 C.F.R. § 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of the work previously performed. *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228,

1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); *compare Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

5

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 2014 WL 241873, at *3. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress-physical ability, age, education, and work experience-and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id.* Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id.* For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id.*

The ALJ may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to

6

significantly limit the range of work permitted by his exertional limitation."[3] *Hoopai,* 499 F.3d at 1076 (internal quotation and citation omitted). Further, where the ALJ finds that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id.* at 1076.

If, at step five, the ALJ establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009). However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante,* 262 F.3d at 954.

**B. ALJ's Findings in this Case**

In the present case, the ALJ applied the five-step sequential evaluation process and found, at step one, that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of November 6, 2009. (AR 21.)

At step two, the ALJ found that it was established that Plaintiff suffered from the following severe impairments: degenerative disc disease and status post lumbar decompression and fusion. (AR 21.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21.)

///

---

[3]It is important to note that "satisfaction of the step two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

At step four, the ALJ found Plaintiff had the residual functional capacity to perform less than a full range of light work as defined in 20 C.F.R. 404.1567(b), reduced by the following limitations: he is no more than occasionally able to climb, stoop, kneel, balance, crouch, or crawl, and is unable to work around unprotected heights and hazardous or moving machinery. (AR 22.)

In light of this RFC assessment, the ALJ concluded that Plaintiff was unable to perform past relevant work (as a warehouse laborer or forklift operator). (AR 24.)

Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 25.) The ALJ took testimony from a vocational expert that given Plaintiff's additional limitations, he could perform work as a cleaner, sorter of agricultural produce, or assembler of plastic batteries. (AR 25.)

Based on this testimony, the ALJ concluded Plaintiff was not disabled. (AR 26.)

**C. Plaintiff's Credibility**

**1. Plaintiff's Position**

Plaintiff argues that the ALJ improperly discredited Plaintiff's own subjective symptom testimony. (Doc. # 18.) Plaintiff first states that the ALJ failed to explain why his testimony was ignored. (*Id*. at 7.) Instead, Plaintiff contends that the ALJ rejected Plaintiff's testimony because it was inconsistent with what the ALJ believed it should be. (*Id*.) In addition, Plaintiff asserts that it appears the ALJ rejected Plaintiff's symptom testimony because it lacked support in the objective medical evidence; however, the ALJ is not permitted to discredit a claimant's subjective symptom testimony on this basis alone. (*Id*. at 8-9.) Plaintiff maintains that with no evidence of malingering, the ALJ was required to articulate specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony, and the ALJ failed to do so. (*Id*.) Plaintiff acknowledges that the ALJ detailed the testimony given by Plaintiff, but argues that the ALJ did *not* articulate why testimony was not credible. (*Id*. at 9-10.)

Plaintiff recounts his testimony that he attends physical therapy because he is in pain, that he can only drive for thirty minutes as a result of his pain, that he had surgery to attempt to relieve his pain, and went to Mexico to obtain treatment when his insurance here did not cover it, that he takes medication for his pain, and that his ability to sit and walk is limited. (*Id*. at 10.) Plaintiff asserts that simply because he can perform some tasks *some of the time* is not a reason to find him not credible. (*Id*.) He contends the ALJ ignored *how* he is able to perform these tasks. (*Id*. at 10-11.)

To the extent he ALJ implied that Plaintiff was only receiving conservative treatment, Plaintiff responds to the contrary, that in fact Plaintiff had multiple injections to relieve his pain, was on medication and had surgery. (*Id*. at 11-12.) Plaintiff contends that the ALJ likewise improperly ignored his good work history, which is probative of his credibility. (*Id*. at 12.) Plaintiff worked continuously for twenty-one years until his disability began in 2009. (*Id*.)

As a result of the ALJ's failure to articulate specific, clear and convincing reasons for his adverse credibility determination as to Plaintiff's subjective symptom testimony, Plaintiff claims that his testimony should be credited and accepted as true, and the court should reverse and remand the decision for the payment of benefits. (*Id*. at 14-15.) Alternatively, he requests that the decision be remanded for the correction of legal errors. (*Id*. at 15.)

Plaintiff also urges the court to reject any *post hac* rationale conveyed by the Commissioner in any response. (*Id*. at 14-15.)

### 2. The Commissioner's Position

The Commissioner argues that the ALJ was not required to use any "magic words" in making her credibility determination; instead, she properly referenced a number of reasons for discounting Plaintiff's subjective reporting of his symptoms. (Doc. # 19 at 4.)

The Commissioner maintains that the ALJ specifically explained why Plaintiff's testimony was not credible by finding that the objective evidence supported a finding Plaintiff was not disabled, discussing Plaintiff's medical evidence. (*Id*.)

The Commissioner acknowledges that a contradiction between subjective symptom testimony and objective medical evidence cannot be the sole basis for discounting symptom testimony. (*Id*. at 4-5.) The Commissioner argues, however, that the ALJ permissibly found that while Plaintiff has some medically determinable impairments that affect his ability to work, there was no objective medical evidence of disabling limitations. (*Id*. at 5.) The Commissioner also highlights various additional reasons stated for the ALJ's adverse credibility determination.

The Commissioner points out that the ALJ gave great weight to the opinion of consultative examiner, Dr. Gasparre. (*Id*.) Additionally, the ALJ determined Plaintiff's impairment improved after receiving treatment, and this is a valid credibility factor. (*Id*.) The ALJ further based her determination on the fact that at the close of Plaintiff's worker's compensation claim in 2008, he was fully released back to work, on a light duty status, and continued working full time until his alleged onset date. (*Id*. at 6.) The Commissioner contends that none of the medical evidence is consistent with Plaintiff's allegations of worsening back pain. (*Id*.)

The ALJ also found Plaintiff's testimony not credible because his daily activities were inconsistent with the allegations of debilitating limitations. (*Id*. at 7.) The Commissioner notes that the ALJ discussed Plaintiff's ability to travel and care for his two children without significant difficulty. (*Id*. at 8.)

The ALJ also reasoned that following his back surgery, his treatment was conservative, which provides yet another basis for doubting Plaintiff's credibility. (*Id*. at 9-10.) Furthermore, the ALJ concluded that Plaintiff appeared to prevent a faster recovery because he needed to be coaxed into doing his exercises. (*Id*. at 10.)

Then, the ALJ discussed the fact that Plaintiff was participating in the intensive work re-entry program, and in the last week he started reporting a worsening of symptoms and issues that were atypical or did not seem to be caused by his back issues. (*Id*.)

1   The Commissioner claims Plaintiff's argument that the ALJ erred by not finding him

2   credible in light of his good work history has no merit; instead, what is relevant is whether

3   the ALJ's credibility determination was supported by substantial evidence. (*Id*. at 11.)

4   Finally, the Commissioner recommends that the ALJ's decision be affirmed. (*Id*. at 13.)

5   Alternatively, should the court find reversible error, the Commissioner requests that the

6   matter be remanded for further proceedings. (*Id*.)

7   **3. Legal Standard**

8   "[A] claimant's credibility becomes important at the stage where the ALJ is assessing

9   residual functional capacity, because the claimant's subjective statements may tell of greater

10   limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th

11   Cir. 2001) (citing SSR 96-7p (1996)). Thus, a claimant's credibility is often crucial to a

12   finding of disability. The ALJ is responsible for determining credibility. *Meanel v. Apfel*, 172

13   F.3d 1111, 1113 (9th Cir. 1999); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *see*

14   *also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

15   In general, when deciding to accept or reject a claimant's subjective symptom

16   testimony, an ALJ must perform a two-stage review: an analysis under *Cotton v. Bowen*, 799

17   F.2d 1403 (9th Cir. 1986) (the "*Cotton* test"), and an analysis of the credibility of the

18   claimant's testimony regarding the severity of his or her symptoms. *Smolen v. Chater*, 80

19   F.3d 1273, 1281 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1529 (adopting two-part test).

20   Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms

21   "must produce objective evidence of an underlying impairment 'which could reasonably be

22   expected to produce pain or other symptoms alleged.'" *Bunnell v. Sullivan*, 947 F.2d 341,

23   344 (9th Cir. 1991) (en banc) (citing 42 U.S.C. § 423(d)(5)(A)); *see also Berry v. Astrue*, 622

24   F.3d 1228, 1234 (9th Cir. 2010)*; Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.

25   2007). This test "imposes only two requirements on the claimant: (1) [he or] she must

26   produce objective medical evidence of an impairment or impairments; and (2) [he or] she

27   must show that the impairment or combination of impairments *could reasonably be expected*

28

11

1   *to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282

2   (emphasis original); *see also* 20 C.F.R. § 404.1529(a)-(b).

3        "Second, if the claimant meets the first test, and there is no evidence of malingering,

4   the ALJ can reject the claimant's testimony about the severity of her symptoms only by

5   offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036

6   (internal quotation marks and citation omitted); *see also Valentine v. Comm'r of Soc. Sec.*

7   *Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

8        An ALJ's credibility findings are entitled to deference if they are supported by

9   substantial evidence and are "sufficiently specific to allow a reviewing court to conclude the

10  adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily

11  discredit a claimant's [symptom] testimony.'" *Bunnell,* 947 F.2d at 345 (quoting *Elam v.*

12  *Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991)). "General findings are

13  insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

14  undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (internal quotation marks

15  and citation omitted).

16       When analyzing credibility, an ALJ may properly consider medical evidence in the

17  analysis. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[w]hile subjective pain

18  testimony cannot be rejected on the sole ground that it is not fully corroborated by objective

19  medical evidence, the medical evidence is still a relevant factor in determining the severity

20  of the claimant's pain and its disabling effects."); *see also Batson v. Comm'r of Soc. Sec.*, 359

21  F.3d 1190, 1196 (9th Cir. 2004) (holding ALJ properly determined credibility where claimant's

22  testimony was contradictory to and unsupported by objective medical evidence).

23       An ALJ may consider various factors in assessing the credibility of the allegedly

24  disabling subjective symptoms, including: daily activities; the location, duration, frequency,

25  and intensity of pain or other symptoms; precipitating and aggravating factors; the type,

26  dosage, effectiveness, and side effects of any medication taken to alleviate symptoms;

27  treatment, other than medication, received for relief of symptoms; any measures a claimant

28

has used to relieve symptoms; and other factors concerning functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

### 4. Analysis

#### a. ALJ's Findings

The ALJ acknowledged that in considering Plaintiff's symptoms, she was required to follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) (which can be shown by medically acceptable clinical and laboratory diagnostic techniques) that could reasonably be expected to produce the Plaintiff's pain or other symptoms. (AR 22.) If this is demonstrated, the ALJ likewise acknowledged that she was required to then evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functioning; however, if statements about the intensity, persistence or functionally limiting effects of pain or symptoms are not substantiated by objective medical evidence, the ALJ is required to make a finding of credibility based on a consideration of the entire case record. (AR 22.)

The ALJ noted that while she did find that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible. (AR 22.)

In making this finding, the ALJ indicated that she gave great weight to the medical opinion of consultative examiner, Richard Gasparre, M.D., that were based on his review of Plaintiff's medical history and examination of Plaintiff. (AR 22.) Dr. Gasparre stated that Plaintiff's spine had a normal appearance but was extremely tender to touch over the L4-S1 midline to paraspinous muscles. (AR 22.) Plaintiff would not raise his legs more than five to ten degrees on each side. (AR 22.) However, he had a negative seated straight leg raise and normal gait without limp or assistive device, was able to walk on his toes and heels, squat and rise, tandem walk, kneel and get on and off the exam table without difficulty. (AR 22-23.) His

upper and lower extremities had a full range of motion with strength and sensation in tact. (AR 23.) As such, Dr. Gasparre concluded Plaintiff could lift twenty pounds occasionally and ten frequently; sit, stand and walk up to six hours a day; and occasionally climb, stoop, bend, kneel, crouch and crawl. (AR 23.)

The ALJ then stated that Dr. Gasparre's findings were supported by the objective medical evidence which showed that Plaintiff's symptoms were not as severe and limited as he alleged, and that his condition had steadily improved since his May 2011 back surgery. (AR 23.)

The ALJ pointed out that in October 2007, around the time of Plaintiff's second work accident, an MRI showed evidence of degenerative disc disease at L4-5 and Lg-S1 with small central disc protrusions at each level. (AR 23.) In July 2008, however, Plaintiff was given a light duty work release at his job and was awarded a permanent partial disability evaluation of eight percent based on his spinal disorders. (AR 23.) Plaintiff continued working full-time until November 2009, the month of his alleged onset date. (AR 23.)

In June 2010, an MRI showed small bony spurring at the anterior vertebral bodies of L4-5 with mild degenerative changes at the posterior elements at L5-S1. (AR 23.) All joints were in good alignment, pre-vertebral soft tissues were within normal limits, and there was no obvious acute bony fracture or joint dislocation. (AR 23.) Notes from Plaintiff's treating physician, James Rappaport, M.D., in October 2010 showed Plaintiff had severe back pain and was walking with an antalgic gait. (AR 23.) In December 2010, Dr. Rappaport reviewed Plaintiff's past radiological examinations and determined his worker's compensation case should be re-opened. (AR 23.) However, a February 2011 MRI of Plaintiff's lumbar spine showed degenerative disc bulging at L4-5 had decreased, and his mild arthropathy was more stable, compared to his October 2007 MRI. (AR 23.) There were no remarkable electro-diagnostic findings, no focused nerve impingement and Plaintiff showed improvement at the L5-S1 level. (AR 23.)

1   In May 2011, Dr. Rappaport performed a lumbar decompression and fusion at two

2   levels on Plaintiff's lumbar spine, and after surgery noted Plaintiff was doing very well. (AR

3   23.) He was given an epidural that resulted in nearly 100% relief. (AR 23.) Upon discharge,

4   Plaintiff was walking independently and taking oral medications for pain. (AR 23.) A July

5   2011 examination revealed Plaintiff was doing remarkably well. (AR 23.)

6   Plaintiff began physical therapy after his surgery, and by July 2011, still had back pain

7   but was becoming more active. (AR 23.) An August 2011 treatment note showed he was

8   driving, walking in his neighborhood everyday, and going to the local pool to swim. (AR 23.)

9   His physical therapist noted his strength, endurance, and functional independence had

10  improved. (AR 23.)

11  In September 2011, Plaintiff was noted to be doing great, able to lift weights above ten

12  pounds, walk longer on the treadmill, and do Pilates exercises for thirty minutes. (AR 23.)

13  Plaintiff still reported pain in his lower back, but the physical therapist recommended him

14  for an intensive four-week work re-entry program where he would focus on exercise, lifting,

15  body mechanics, cardiovascular training, increasing gait speed, and returning to the

16  workforce. (AR 23.) In October 2011, Plaintiff was doing well and the physical therapist noted

17  she was pleased with Plaintiff's abilities and endurance. (AR 23.) That month, Plaintiff also

18  began complaining of problems urinating, but the physical therapist stated she did not think

19  it was related to his back pain. (AR 23-24.) A November 2011 treatment note by the physical

20  therapist indicated Plaintiff began complaining of headaches, numbness, tingling, fatigue,

21  increase in urinary frequency, and a cold sensation in his thighs when exercising. (AR 24.)

22  The physical therapist noted that the headache complaints were atypical. (AR 24.)

23  In light of this evidence, the ALJ concluded that Plaintiff's condition had improved

24  since his May 2011 surgery. (AR 24.) She acknowledged Plaintiff had lingering back pain, but

25  indicated that the evidence did not show any worsening. (AR 24.) The ALJ said Plaintiff

26  appeared to be preventing a faster recovery because physical therapy notes stated that he was

27  guarded and had to be coaxed into doing exercises. (AR 24.)

28

1    The ALJ also concluded that Plaintiff's recent complaints of headaches, increased

2    urinary frequency, and fatigue were not entirely credible, as they were inconsistent with his

3    record of steady improvement and appeared unrelated to his back problems. (AR 24.) The

4    ALJ noted that Plaintiff had not sought any independent treatment with an acceptable

5    medical source for these disorders. (AR 24.)

6          The ALJ also discussed that post-operative treatment notes from September 2011

7    recommended no more than sedentary work, and that the physical therapist, in her

8    November 2011 note, anticipated Plaintiff would be limited to sedentary work. (AR 24.)

9    Nevertheless, the ALJ found he was not so limited in light of his increased ability to walk long

10   distances, lift heavier objects, and perform Pilates exercises. (AR 24.) The ALJ also pointed

11   out that Plaintiff testified he traveled to Mexico twice in 2010, and was able to drive and care

12   for his two children without significant difficulty, which tended to show Plaintiff's symptoms

13   were not as severe and limiting as alleged. (AR 24.)

14                                **b. Discussion**

15         While it is true that much of the ALJ's reasoning for discounting Plaintiff's subjective

16   symptom testimony is that it was contradicted by the objective medical evidence, this was not

17   the only basis for the adverse credibility determination. Instead, this was one factor in the

18   ALJ's determination regarding Plaintiff's credibility. For the reasons stated below, the court

19   finds the ALJ did articulate specific, clear and convincing reasons to support her credibility

20   determination supported by substantial evidence.

21         The ALJ must give specific, clear and convincing reasons to discredit a claimant's

22   subjective symptom testimony; however, "the ALJ is not 'required to believe every allegation

23   of disabling pain, or else disability benefits would be available for the asking, a result plainly

24   contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)

25   (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "In evaluating the claimant's

26   testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" *Id.* (citation

27   omitted). As such, the ALJ may properly "consider inconsistencies either in the claimant's

28

16

testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *See id*. (citations and quotation marks omitted). "While a claimant need not 'vegetate in a dark room' in order to be eligible for benefits...the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]" *Id*. (citations and internal quotation marks omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent they contradict claims of totally debilitating impairment." *Id*. (citation omitted).

First, the ALJ gave great weight to the opinion of Dr. Gasparre, who reviewed Plaintiff's medical history and examined Plaintiff. Dr. Gasparre concluded that Plaintiff could lift twenty pounds occasionally, ten pounds frequently; could sit, stand and walk up to six hours a day, and occasionally climb, stoop, bend, kneel, crouch and crawl. The ALJ indicated that these findings were supported by the objective evidence that showed Plaintiff was not as limited as he alleged and that his condition had steadily improved since his back surgery. The ALJ noted that while Plaintiff was diagnosed with degenerative disc disease after his second work accident in 2007, he was given a light-duty work release in July 2008, and continued to work full time until November 2009. She also stated that Plaintiff's treating physician, Dr. Rappaport, had noted steady progress in Plaintiff's condition. While Plaintiff still complained of some back pain, he was taking medication for the pain and was increasing his activities. The ALJ relayed similar statements of improvement from Plaintiff's physical therapist. In fact, the physical therapist had recommended him for an intensive program with a goal of re-entry into the workforce.

The ALJ further concluded that Plaintiff's recent complaints of headaches, increased urinary frequency, and fatigue were not entirely credible, as they were inconsistent with his record of steady improvement and appeared unrelated to his back problems. This is also

supported by substantial evidence in the record. The notes of Plaintiff's treating physician and physical therapist did evidence Plaintiff's steady improvement. In addition, the physical therapist stated in her progress notes that Plaintiff's complaints of headaches were atypical and that she did not think the difficulty urinating was a result of Plaintiff's back pain. The ALJ also noted that Plaintiff had not sought any independent treatment for these issues. *See Molina*, 674 F.3d at 1113 (citation omitted) (finding that "in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment...").

In addition to pointing out the various contradictions the ALJ perceived between the Plaintiff's subjective symptom allegations and testimony and the objective medical evidence, the ALJ pointed out inconsistencies between Plaintiff's subjective symptom reporting and his own testimony and/or conduct. While Plaintiff asserted that he should be further limited with respect to his ability to sit and/or stand, he reported an increased ability to walk long distance, lift heavier objects and perform Pilates exercises. This finding is supported by substantial evidence in the record, and it was reasonable for the ALJ to conclude that these activities undermined Plaintiff's claims that he was so limited. *See Molina*, 674 F.3d at 1113 (noting that an "ALJ may discredit a claimant when he reports participation in everyday activities indicating capacities that are transferable to a work setting" and "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally debilitating impairment").

The ALJ also indicated that Plaintiff was able to drive and care for his two children without significant difficulty. The ALJ could reasonably call Plaintiff's subjective limitation testimony into question where other evidence suggested that he was engaging in conduct inconsistent with these symptoms. *See Molina*, 674 F.3d at 1112.

The ALJ further based her credibility determination on the fact that Plaintiff had been able to travel to Mexico twice in 2010. While Plaintiff states this was improper because the

1    ALJ left out the fact that he was traveling to Mexico to seek treatment, the Ninth Circuit has

2    previously held that an ability to travel is a valid reason to discredit a claimant's symptom

3    testimony. Regardless of the purpose for Plaintiff's travel to Mexico, the ALJ here could

4    reasonably infer just from the fact that Plaintiff was able to travel at all that he was not as

5    physically limited as he purported to be. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th

6    Cir. 2008).

7         The ALJ also stated that it appeared Plaintiff was preventing a faster recovery as his

8    physical therapist's notes indicated Plaintiff was guarded and needed coaxing to do his

9    exercises. It was reasonable for the ALJ to discredit Plaintiff's testimony on this basis. *See*

10   *Tommasetti*, 533 F.3d at 1039.

11        While Plaintiff claims that the ALJ should have considered him credible in light of his

12   good work history, he provides no authority to support this proposition. The inquiry here is

13   focused on whether the ALJ set forth specific, clear and convincing reasons for an adverse

14   credibility determination, not whether other evidence exists that bolsters Plaintiff's

15   credibility.

16        The court has outlined above the specific, clear and convincing reasons the ALJ gave

17   for determining Plaintiff's subjective symptom testimony to not be entirely credible that are

18   supported by substantial evidence. The reasons given by the ALJ were not vague, as Plaintiff

19   suggests; rather, they were sufficiently specific so that this court could conclude that they

20   were not arbitrary and instead were based on permissible grounds.

### IV. CONCLUSION

21

22        After carefully reviewing the record as a whole, the district court should find there is

23   substantial evidence to support the ALJ's determination and the ALJ's decision should be

24   affirmed.

25   ///

26   ///

27

28
                                              19

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and/or Remand (Doc. #18) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that defendant Commissioner's Cross-Motion for Summary Judgment (Doc. #20) be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

DATED:  February 6, 2014

_____

**WILLIAM G.  COBB**
**UNITED STATES MAGISTRATE JUDGE**

20